**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MATTHEW UMSTEAD,** | Case No. 5:18 CV 1066 |
| Petitioner, | Judge Jeffrey J. Helmick |
| v. | Magistrate Judge James R. Knepp II |
| **WARDEN DAVID MARQUIS,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

*Pro se* Petitioner Matthew Umstead ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent David Marquis, Warden of Richland Correctional Institute ("Respondent"), filed an Answer/Return of Writ (Doc. 7) and Petitioner filed a Reply/Traverse (Doc. 8)[1]. The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated May 23, 2018). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. §

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Here, the Ohio Fifth District Court of Appeals, set forth the following facts:

{¶ 2} On November 23, 2015, Sgt. Timothy Stryker, a narcotics detective with the Holmes County Sheriff's Office, received information concerning a purchase of pseudoephedrine from the Ritzman Pharmacy in Shreve, Ohio. The purchaser was Donnie Spurlock, who was known by the detective to periodically stay at appellant's home on West Jackson Street in Holmesville, Ohio. Based on the pharmacy information, Sgt. Stryker decided to conduct visual surveillance of appellant's residence. Stryker observed that appellant's vehicle was not at the residence. After a while, Stryker returned to the Sheriff's Department, but he received a second alert that Spurlock had also purchased pseudoephedrine at another store, this time the Rite Aid Pharmacy in Wooster. Stryker went back to again set up surveillance at appellant's home. At that time, he observed appellant come home, with Spurlock in the vehicle.

{¶ 3} At about 7:25 PM on the same date, after Stryker had returned to his regular uniformed patrol activities, he and a fellow officer, Detective Mullet, drove down West Jackson and observed a fire in the back yard of appellant's residence. He saw "black smoke" coming from the fire and suspected it was not wood burning. Tr. at 107. He approached the back of the residence and approached co-defendant Jason White, who was putting more items into the fire. White indicated he was just "burning some trash." Tr. at 109. Stryker observed a trash bag next to White as he approached him. The bag was later found to contain used pseudoephedrine packs. White indicated that appellant was in the house and left to get him. Stryker observed an odor of chemical coming from the fire and was able to see a pseudoephedrine box that had not caught fire yet. Stryker decided to secure the property to get a search warrant. While he was walking on the property, he observed an odor he associated with the manufacturing of methamphetamine in the narrow area between the "man cave" (a shed behind the house) and the back of the detached garage. According to a photographic exhibit provided by the State, the distance between the northeast corner of the "man cave" shed and the northeast corner of the house is seventy-five feet, making the man cave about forty feet behind the rear of the house, abutting the back wall of the garage. Shortly thereafter, back-up officers entered the garage.

{¶ 4} Spurlock in the meantime came out of the "man cave" and was cuffed by Deputy Strother. Deputies then entered the man cave and discovered an active meth lab. The lab was dismantled. A search warrant was obtained for the property at about 10:25 PM. During execution of the warrant in the home, they found "baggies of a crystal-like white powdered" substance in a safe in appellant's bedroom. Tr. at

2

125. The powder was later analyzed by BCI and determined to be methamphetamine. Tr. at 172.

{¶ 5} The deputies took appellant into custody that evening, after White had gone into the house to get him. Stryker interviewed appellant on video at the Holmes County Jail at approximately 1:00 AM on November 24, 2015.

{¶ 6} On December 17, 2015, Sgt. Stryker returned to appellant's residence based on a telephone call from appellant's mother, who indicated she had found a gun on the back of the headboard in appellant's room.

*State v. Umstead*, 85 N.E.3d 518, 521-22 (Ohio Ct. App. 2017) ("*Umstead I*"); (Ex. 29, Doc. 7-1, at 182-83).

PROCEDURAL HISTORY

State Court Conviction

On December 14, 2015, a Holmes County Grand Jury indicted Petitioner on: one count of Illegal Manufacture of Drugs (Count 1); one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs (Count 2); one count of Tampering with Evidence (Count 3); two counts of Endangering Children (Counts 4-5); and one count of Aggravated Possession of Drugs (Count 6). (Ex. 1, Doc. 7-1, at 6-9). Petitioner pleaded not guilty to each count upon arraignment. (Ex. 2, Doc. 7-1, at 11).

On January 12, 2016, the State filed a discovery response which listed Stephanie Laux with the Ohio Bureau of Criminal Investigation as a witness to be called at trial. (Ex. 7, Doc. 7-1, at 24).

On January 25, 2016, a Holmes County Grand Jury indicted Petitioner on: one count of Illegal Manufacture of Drugs (Count 1); one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs (Count 2); one count of Aggravated Possession of Drugs (Count 3); one count of Having Weapons While Under Disability (Counts 4); and one count of Aggravated Possession of Drugs (Count 5); Counts 1, 2, 3, and 5 carried firearm specifications. (Ex. 9, Doc.

7-1, at 38-43). Petitioner pleaded not guilty to each count upon arraignment. (Ex. 10, Doc. 7-1, at 46). The State filed a motion to join the two indictments (Ex. 11, Doc. 7-1, at 47-48), which the trial court granted (Ex. 12, Doc. 7-1, at 49).

The State filed additional discovery responses in April 2016, including a police report by Lt. Eric Troyer regarding his test firing of a gun (Ex. 15, Doc. 7-1, at 71), and the identification of witness Jared Prill from the Ohio Bureau of Criminal Investigation (Ex. 16, Doc. 7-1, at 73). On April 6, 2016, Petitioner filed a motion *in limine* to exclude Troyer's report and Prill's testimony, arguing the evidence was disclosed too close to trial. (Ex. 17, Doc. 7-1, at 75-76). The trial court heard oral arguments and overruled the motion. (Doc. 7-2, at 11-17) (Trial Transcript 1).

Prior to trial, the State entered a *nolle prosequi* as to Counts 1, 2, and 6 of the original indictment. (Ex. 18, Doc. 7-1, at 91)[2].

Petitioner's case went to trial April 7, 2016, and at the close of the State's case, Petitioner moved for a directed verdict, which the trial court denied. (Doc. 7-3, at 42-43) (Trial Transcript 2). On April 8, 2016, a jury found Petitioner guilty on each charge, but found him not guilty on the firearm specifications. *See* Ex. 21, Doc. 7-1, at 95-108.

At sentencing, on April 11, 2016, the trial court sentenced Petitioner to an aggregate term of sixteen and a half years imprisonment. (Ex. 25, Doc. 7-1, at 121-22).

Direct Appeal

On May 9, 2016, Petitioner, through counsel, filed a notice of appeal to the Ohio Fifth District Court of Appeals. (Ex. 26, Doc. 7-1, at 125). In his brief, Petitioner raised three assignments of error:

---

2. The State moved to renumber the remaining charges (Ex. 19, Doc. 7-1, at 92-93), which the trial court granted (Ex. 20, Doc. 7-1, at 94).

1. There was insufficient evidence to support Appellant's convictions and/or the convictions are against the manifest weight of the evidence.

2. The trial court erred in denying Appellant's Motion to Dismiss under Crim. R. 29(A) at the close of all evidence.

3. The Appellant was denied effective assistance of counsel.

(Ex. 27, Doc. 7-1, at 126-49) (capitalization altered). The State opposed (Ex. 28, Doc. 7-1, at 161-78), and on February 24, 2017, the Fifth District Court of Appeals affirmed the judgment of the trial court, *Umstead I*, 85 N.E.3d at 521; (Ex. 29, Doc. 7-1, at 181-97).

On March 14, 2016, Petitioner, *pro se*, filed a notice of appeal to the Ohio Supreme Court. (Ex. 30, Doc. 7-1, at 198-200). In his memorandum in support, Petitioner raised three propositions of law:

1. There was insufficient evidence to support Appellant's convictions and/or the convictions are against the manifest weight of the evidence in violation of Appellant's state and federal constitutional rights to Due Process.

2. The trial court erred and violated Appellant's state and federal rights to Due Process when it denied Appellant's Criminal Rule 29 Motion for Acquittal at the close of all the evidence, U.S. Constitution, 14th Amendment.

3. Trial counsel was ineffective in violation of Appellant's 6th and 14th Amendment rights under the U.S. federal Constitution.

(Ex. 31, Doc. 7-1, at 201-09) (capitalization altered). The State opposed (Ex. 32, Doc. 7-1, at 228-40), and on July 5, 2017, the Ohio Supreme Court declined to accept jurisdiction (Ex. 33, Doc. 7-1, at 241).

<u>Ohio App. R. 26(B) Application to Reopen Direct Appeal</u>

On April 12, 2017, Petitioner, *pro se*, filed an Ohio Appellate Rule 26(B) application to reopen his direct appeal, alleging his appellate counsel was ineffective for five reasons:

1. Appellate counsel violated Appellant's federal and state constitutional rights to Due Process in failing to adequately argue that the evidence was insufficient to

sustain the weapons under disability charge. U.S. Const. 6th and 14th Amendments.

2. Appellate counsel's failure to adequately show that the evidence was insufficient to sustain the tampering with the evidence charge violated Appellant's 6th and 14th Amendment rights under the federal Constitution to Due Process and the effective assistance of counsel.

3. Appellate counsel violated Appellant's state and federal rights to Due Process and the effective assistance of counsel in failing to argue that the evidence was insufficient to support the sentence in violation of the 14th Amendment of the United States Constitution.

4. Counsel was [] ineffective in failing to challenge the testimony of expert Stephanie Laux when the State failed to comply with Criminal Rule 16(K).

5. Appellate counsel was ineffective in failing to preserve the federal nature of Appellant's claims on direct appeal in order to preserve Appellant's right to pursue a writ of habeas corpus pursuant to 28 USCS 2254.

(Ex. 34, Doc. 7-1, at 242-51) (capitalization altered).

On July 24, 2017, the Fifth District Court of Appeals granted Petitioner relief on the first and fourth claims, finding Petitioner had "at least met his burden of establishing that there is a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel" on these grounds. (Ex. 35, Doc. 7-1, at 256, 258).[3] The appellate court thus reopened Petitioner's appeal as to these two grounds, and the case was remanded to the trial court with an order for new appellate counsel to be appointed. *Id*. at 259.

On August 24, 2017, Petitioner, *pro se*, filed a notice of appeal to the Ohio Supreme Court. (Ex. 36, Doc. 7-1, at 260-61). In his memorandum in support, he raised the following propositions of law:

1. Appellate counsel was ineffective in failing to adequately argue that the evidence was insufficient to sustain the tampering with evidence charge in

---

3. The appellate court denied Petitioner's application as to his other asserted grounds. (Ex. 35, Doc. 7-1, at 253-59).

6

violation of Appellant's 6th and 14th Amendment rights to Due Process and the effective assistance of counsel under the state and federal constitutions.

2. Appellate counsel violated Appellant's state and federal rights to Due Process and the effective assistance of counsel in failing to argue that the evidence was insufficient to support the sentence in violation of the 6th and 14th Amendments to the state and federal constitutions.

3. Appellate counsel was ineffective in failing to preserve the federal nature of Appellant's claims on direct appeal in order to preserve Appellant's right to pursue a writ of habeas corpus pursuant to 28 USCS 2254.

(Ex. 37, Doc. 7-1, at 262-72) (capitalization altered). On November 1, 2017, the Ohio Supreme Court declined to accept jurisdiction. (Ex. 38, Doc. 7-1, at 282).

On August 28, 2017, Petitioner's new appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Ex. 39, Doc. 7-1, at 283-93). Therein, she stated she had reviewed the two issues on which the appellate court granted Petitioner's application for reopening and found them to lack merit. *Id.* She set forth the following two proposed assignments of error, but explained that she believed them to be meritless:

1. Appellant was provided ineffective assistance of appellate counsel due to counsel's failure to challenge the evidence as to whether Appellant has a prior conviction to support his weapons under disability conviction.

2. Appellant was provided ineffective assistance of appellate counsel due to counsel's failure to challenge [] expert testimony of Stephanie Laux for failure to comply with Crim.R.16(K).

(Ex. 39, Doc. 7-1, at 283-93). Counsel thus requested permission to withdraw from the appeal because "a review of the two issues approved for briefing by this Court . . . show that neither issue has merit." *Id*. at 293.

On September 13, 2017, Petitioner, *pro se*, filed his own brief wherein he raised assignments of error identical to those proposed by counsel. *See* Ex. 40, Doc. 7-1, at 309-14. The State responded in opposition. (Ex. 41, Doc. 7-1, at 315-27).

On November 30, 2017, the Fifth District Court of Appeals affirmed the decision of the trial court, holding:

{¶ 29} During the testimony of Sgt. Stryker at appellant's trial, the State presented him on the stand with a State's exhibit he identified as a "certified copy through the Wayne County Common Pleas Court of a felony domestic violence charge for Matthew B. Umstead." Tr. at 140. Stryker also read the case number, 99CR0255, confirmed it was "signed and under seal," and responded in the affirmative that it reflected appellant had been "convicted of a felony Domestic Violence in that case." *Id.* Defense counsel did not cross-examine Stryker on this issue. The certified documents were later entered as Exhibit 29 without objection. Tr. at 241–242.

{¶ 30} Appellant, in his *pro se* brief, posits that the State relied upon identical names alone as a means of proving the prior conviction, in violation of the rule of *Lumpkin*. However, "[a]s trial courts often note, proof beyond a reasonable doubt does not mean proof beyond any doubt." *State v. Burgess,* 11th Dist. No. 2002–L–019, 2004–Ohio–3338, ¶ 37. We are guided on this issue by our decision in *State v. Marshall*, 5th Dist. Tuscarawas No. 2012 AP 11 0065, 2013–Ohio–2978. Similar to what occurred in the case *sub judice*, in *Marshall* the State utilized a police officer to testify at trial as to certified judgment entries demonstrating prior DUI convictions against the defendant, who likewise did not object to the testimony. We rejected the defendant's claim that there was insufficient evidence proving the prior convictions were actually against him, not someone else. In so ruling, we additionally referenced the language of R.C. 2945.75(B)(3) and recognized that the defendant "had the burden of proving the defect in the evidence by a preponderance of the evidence." *Id.* at ¶ 77.

{¶ 31} Accordingly, the proposed Assignments of Error as to the sufficiency of the evidence of appellant's prior conviction are overruled.

{¶ 32} We next turn to the merits of appellant's counsel's and appellant's aforesaid potential Assignments of Error claiming that trial counsel had been ineffective in failing to challenge the testimony of State's forensic chemistry expert Stephanie Laux in light of Crim.R 16(K).

{¶ 33} Crim.R. 16(K) states as follows: "Expert Witnesses; Reports**.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial."

8

{¶ 34} A review of the trial court file in the case *sub judice* reveals a supplemental discovery response by the State under case number 15CR106, filed January 12, 2016, stating that a BCI expert witness report and laboratory report had been delivered to defense counsel via an independent web portal.

{¶ 35} Despite this, in appellant's application to re-open, he asserted to this Court that "the record in this case shows that the State failed to provide defense counsel with a written report by Stephanie Laux which would have revealed what she was going to testify to at trial ***." Appellant's Application for Reopening, April 12, 2017, at 8.

{¶ 36} Appellant, in his *pro se* brief, now asserts that "he has not been able to locate any proof" that his defense counsel was actually provided with Laux's report on January 12, 2016. Brief of Appellant at 3.

{¶ 37} In determining a claim of ineffective assistance of trial counsel, our review is limited to the record before us. *See State v. Prophet*, 10th Dist. Franklin No. 14AP–875, 2015–Ohio–4997, ¶ 32. Having had the opportunity to more closely review the discovery aspects of the present case, we find no merit in the proposed assignments of error that counsel had been ineffective in failing to challenge Laux's expert testimony on the basis of the Crim.R 16(K) requirements.

{¶ 38} Accordingly, all of the above proposed Assignments of Error are overruled, and, after independently reviewing the record, we agree with counsel's conclusion that no arguably meritorious claims presently exist upon which to base further direct appeal.

{¶ 39} Therefore, despite our prior decision to allow re-opening, we find the present appeal to be wholly frivolous under *Anders*, grant counsel's request to withdraw, and again affirm the judgment of the trial court.

*State v. Umstead*, 2017 WL 5956834, at *3-4 (Ohio Ct. App) ("*Umstead II*") (emphasis in original, subheadings omitted); (Ex. 42, Doc. 7-1, at 335-45).

On December 11, 2017, Petitioner, *pro se*, filed a notice of appeal to the Ohio Supreme Court. (Ex. 43, Doc. 7-1, at 347). In his memorandum in support, Petitioner raised two propositions of law:

1. Appellant was provided ineffective assistance of appellate counsel when counsel failed to raise trial counsel's failure to challenge the evidence as to whether Appellant has a prior conviction to support his weapons under disability conviction.

2.  Appellant was provided ineffective assistance of appellate counsel due to appellant counsel's failure to raise trial counsel's ineffectiveness in not challenging the testimony of expert Stephanie Laux when the State failed to comply with Criminal Rule 16(K).

(Ex. 44, Doc. 7-1, at 349-54). The State waived a response. (Ex. 45, Doc. 7-1, at 368). On April 25, 2018, the Ohio Supreme Court declined jurisdiction. (Ex. 46, Doc. 7-1, at 369).

### FEDERAL HABEAS CORPUS

On May 1, 2018, Petitioner timely filed the instant habeas petition. (Doc. 1). In it, Petitioner raises four grounds for relief:

**GROUND ONE**: Evidence was insufficient to sustain the convictions (14[th] Am. U.S. Const. Due Process).

**Supporting Facts:** The state failed to prove all charges beyond a reasonable doubt.

**GROUND TWO:** Trial court erred in denying Appellant's motion to dismiss under [Criminal Rule] 29(A); (see 14th Am. U.S. Const.)

**Supporting Facts:** Trial court violated Appellant's state and federal rights to due process when it denied Appellant's motion to dismiss charges where evidence did not support the convictions.

**GROUND THREE:** Trial counsel was ineffective in violation of Appellant's 6th and 14th Am. Rights under federal const.

**Supporting Facts:** Trial counsel failed to file a motion to suppress; failed to object to hearsay testimony; failed to file a motion in limine; and trial counsel elicited testimony that was prejudicial to the defendant.

**GROUND FOUR:** Appellant's counsel was ineffective in violation of Appellant's 6th and 14th Am. rights to the U.S. Const.

**Supporting Facts:** Appellate counsel failed to argue that the evidence was insufficient to support the sentence in this case and counsel failed to adequately argue that the evidence did not support the convictions in this case. Thus counsel on appeal was ineffective for these reasons. And, appellate counsel failed to challenge inadmissible expert testimony of Stephanie Laux.

(Doc. 1, at 5-10).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

For the following reasons, the undersigned concludes each of Petitioner's four grounds for relief are meritless, with one being procedurally defaulted in part. The undersigned addresses the grounds in groups where they may be resolved in a similar manner and ultimately recommends the Petition (Doc. 1), be denied in its entirety.

<u>Grounds One and Two</u>

In Ground One, Petitioner alleges the evidence presented at trial was insufficient to sustain his drug-related convictions as well as his weapons under disability conviction. (Doc. 8, at 9-15). Similarly, in Ground Two, Petitioner argues the trial court erred in denying his motion for acquittal under Ohio Criminal Rule 29(A), arguing that "no rational trier of fact could have found all of the essential elements of the crimes". *Id*. at 17. These claims are preserved for habeas review as Petitioner properly exhausted them on direct appeal. (Exs. 27 & 31, Doc. 7-1, at 126-49, 201-09). Respondent contends that Petitioner's claims fail on the merits under the highly deferential standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1970). (Doc. 7, at 18-26). For the reasons discussed below, the undersigned agrees and recommends Grounds One and Two be denied.

The standard for a sufficiency of evidence claim is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson*, 443 U.S. at 319). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with

12

a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326. In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324, n.16. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as the evidence presented is sufficient for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under the AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown*, 567 F.3d at 205 (finding even if a rational trier of fact could not have found petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d

13

703, 710 (7th Cir. 2009)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").

*Ground One*

In Ground One, Petitioner specifically challenges the sufficiency of the State's evidence that he was "complicit" in aiding and abetting the possession or manufacturing of methamphetamine. (Doc. 8, at 11). Further, Petitioner contends the State's evidence was also insufficient to support his convictions for tampering with evidence and having a weapon under disability. *Id.* at 14-15. The Fifth District Court of Appeals considered these claims on direct appeal and rejected them:

{¶ 15} In his First Assignment of Error, appellant contends his convictions tied to the methamphetamine lab at the back of his property were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

{¶ 16} The gist of appellant's claim concerning the sufficiency of the evidence is his challenge to the State's theory that appellant acted in complicity with Spurlock and/or White to operate the methamphetamine lab in the "man cave" shed building at the back of the garage, urging that at least six of the counts centered on the meth lab found in the man cave.

{¶ 17} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 18} Appellant directs our attention to the "aiding or abetting" subsection of Ohio's complicity statute, *i.e.*, R.C. 2923.03(A)(2). This portion of the statute reads in pertinent part as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." Under R.C. 2923.03(F) of the complicity statute, "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished *as if he were a principal offender*." (Emphasis added).

14

{¶ 19} We have recognized that in order to support a conviction for complicity by aiding or abetting under R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal, and such intent may be inferred from the circumstances surrounding the crime. *State v. Shrider,* 5th Dist. Licking No. 07 CA 111, 2008-Ohio-3648, 2008 WL 2840598, ¶ 41, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. *State v. Mullins* (1986), 34 Ohio App.3d 192, 200, 517 N.E.2d 945, citing *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 140, 316 N.E.2d 897.

{¶ 20} In the case *sub judice*, appellant submits, and we agree, that six of the counts could be reasonably categorized as directly related to the operation of a meth lab in the shed or "man-cave" on his residential property in Holmesville. The State's essential theory at trial was that appellant acted in complicity with Spurlock and White in running a meth lab operation at that site. The trial court correspondingly gave an instruction to the jury on complicity, both on "aiding or abetting" and "soliciting or procuring." Tr. at 263–264. Appellant presently argues there was no evidence that he directly participated in the meth lab and no evidence that he supported, assisted, encouraged, cooperated with, advised, or incited Spurlock and/or White in the commission of the charged crimes, and no evidence that the defendant shared their criminal intent. According to appellant, the only significant evidence before the jury was: 1) that appellant was traveling to Wooster for a specified purpose, other than to stop at the pharmacies, and the other two rode along; 2) they stopped at two pharmacies, but there was no indication that appellant had knowledge of what was purchased or why they wanted to stop at those locations; 3) the meth lab was found at the back of his property in the man cave, and even though he was in his home, there was no direct indication that he was aware of the same; 4) White was burning trash that contained appellant's garbage and other items purchased by White and Spurlock.

{¶ 21} However, Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey,* 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321. "The only notable exception to this principle is where the inference between the facts proven and the facts sought to be proven is so attenuated that no reasonable mind could find proof beyond a reasonable doubt." *Id.,* citing *State v. Griffin* (1979), 13 Ohio App.3d 376, 377–378, 469 N.E.2d 1329. In the present case, while the evidence indeed suggested that appellant did not exit the vehicle when taking his cohorts to the pharmacies where the pseudoephedrine purchases were made, appellant nonetheless took them to two different outlets more than 20 miles apart in a single day. *See* Tr. at 138. Sergeant Stryker described for the jury the "Implex" system used by drugstores and law enforcement to track and record pseudoephedrine purchases as a means of controlling potential use in illegal

15

methamphetamine manufacturing. Tr. at 101–102. He described the process of "smurfing," where a buyer of pseudoephedrine attempts to get around the regulations limiting individual purchases by getting another person to buy the item in exchange for drugs or cash. Tr. at 102. Stryker also testified that appellant's man-cave, wherein the meth lab was discovered, was no more than seventy-five feet behind appellant's house, and on the evening in question was emitting a noxious smell. Tr. at 111–112.

{¶ 22} Therefore, upon review, we find sufficient circumstantial evidence existed for reasonable fact finders to conclude beyond a reasonable doubt that appellant was complicit in the offenses pertaining to illegal drug manufacturing, assembly, and possession, as well as the endangering children counts. We thus hold said convictions were supported by the sufficiency of the evidence.

{¶ 23} Appellant also challenges the sufficiency of the evidence regarding the offense of tampering with the evidence. He contends he was charged for same based on the "burning of the trash," despite the claimed lack of evidence that he participated in said burning. The evidence presented was essentially that White was observed by the deputies burning the trash "to start a fire." However, given that the testimony revealed the "trash" awaiting the fire included several opened pseudoephedrine packets and that the burning was being done on appellant's property, the site of the meth lab, while appellant was home, we find sufficient evidence was presented for reasonable fact finders to convict appellant of complicity on the count of tampering with evidence.

{¶ 24} Appellant lastly contends his conviction for having weapons under disability was not supported by sufficient evidence. The gun in question was found by appellant's mother from several days to a couple of weeks after appellant had been arrested and the deputies had searched his residence. It was hidden behind the headboard in appellant's bedroom, the same room in which a safe containing methamphetamine had been discovered on November 23, 2015. Appellant asserts that during the intervening time, others had access to his home, including an ex-wife who apparently began living there with the children, and there were no fingerprints on the weapon and no registration connecting same to appellant. Finally, appellant points out that the jury found him not guilty of the firearm specifications with regard to four of the other counts, but found him guilty of having a weapon under disability for a gun that may not have even been in the home at the time appellant was arrested.

{¶ 25} However, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable finders of fact could have found appellant guilty on the weapons under disability charge, beyond a reasonable doubt.

*Umstead I*, 85 N.E.3d at 522-23; (Ex. 29, Doc. 7-1, at 185-89).

In examining Petitioner's claims here, the Fifth District Court of Appeals cited *State v. Jenks*, 574 N.E.2d 492 (Ohio 1991) – the Ohio Supreme Court case which sets forth a nearly identical standard of review for a sufficiency of the evidence claim as its federal kin, *Jackson. Umstead I*, 85 N.E.3d at 522. Then, turning to the elements of Petitioner's crimes, the court noted that "[u]nder R.C. 2923.03(F) of the complicity statute, '[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished *as if he were a principal offender.*'" *Id*. at 523 (emphasis in original). The court noted that, to obtain a conviction for aiding and abetting under Ohio law, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal, and such intent may be inferred from the circumstances surrounding the crime." *Id*. (citing *State v. Shrider,* 2008 WL 2840598 at *4 (Ohio Ct. App.) (citing *State v. Johnson*, 754 N.E.2d 796, syllabus (Ohio 2001))). Here, the court applied the *Jenks* standard and examined the evidence related to the drug and evidence tampering charges – and viewing such in the light most favorable to the prosecution – concluded there was sufficient evidence to establish each element of the charged crimes. *Umstead I*, 85 N.E.3d at 522-25. For example, the court noted that the methamphetamine lab's location was in Petitioner's backyard "man cave", 40 feet from his home, and it emitted the noxious smell of an active methamphetamine cook. *Id.* at 525. Further, the court discussed the evidence tampering charge, noting that the evidence presented at trial showed Petitioner was home as his co-defendant burned their "trash" in a fire on Petitioner's property in close proximity to the methamphetamine lab; trash that included several pseudoephedrine packs. *Id.* at 524. The court also addressed the trial evidence surrounding the weapons under disability charge, concluding that "reasonable finders of fact could have found appellant guilty" on the charge because the gun was found hidden

17

behind Petitioner's headboard in his bedroom in close proximity to a safe containing finished methamphetamine. *Id.*

Petitioner voices discontentment to this Court (as he did to the state courts) that no *direct* evidence linked him to his crimes. (Doc. 8, at 9-11). However, the Fifth District Court of Appeals – relying on its interpretation of state law – emphasized: "Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. The only notable exception to this principle is where the inference between the facts proven and the facts sought to be proven is so attenuated that no reasonable mind could find proof beyond a reasonable doubt." *Umstead I*, 85 N.E.3d at 524-25 (internal citations and quotations omitted). Consistent with *Jackson*, the court's decision that this evidence was sufficient to sustain Petitioner's convictions was not contrary to, or an unreasonable application of, federal law. It is not this Court's role to sit as an additional appellate court on these matters. *See, e.g., Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). State courts define the elements of state crimes, and what is essential to establish each element. *See, e.g., Sanford v. Yukins*, 388 F.3d 855, 862 (6th Cir. 2002) ("What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.") (quoting *Bates v. McCautry*, 934 F.2d 99, 103 (7th Cir. 1991)); *see also Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. For these reasons, the undersigned finds the state court decision is not contrary to, or an unreasonable application of, federal law.

*Ground Two*

In Ground Two, Petitioner argues the trial court erred in denying his Motion for Acquittal under Ohio Criminal Rule 29(A) because "no rational trier of fact could have found all of the essential elements of the crimes" and the "prosecution clearly failed to prove that Petitioner participated in or had knowledge of the meth lab at the back of his property." (Doc. 8, at 16-17). As set forth below, to the extent Petitioner alleges the court erred in denying a motion for acquittal at the trial level, such a claim is not cognizable on habeas review; to the extent he alleges his Due Process rights were violated because the evidence was insufficient to support his convictions, this claim fails for the reasons discussed above in relation to Ground One. In either respect, Ground Two must be denied.

This Court will not have jurisdiction over a petitioner's claims for purposes of habeas review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based *solely* on an error of state law is not redressable through the federal habeas process.") (emphasis in original) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). "The decision whether to grant a motion for acquittal pursuant to Ohio Crim. R. 29 is a matter of state law and is cognizable in habeas only if the denial of such a motion is a violation of due process." *Smith v. Bobby*, 2005 WL 2076667, at *24 (N.D. Ohio), *report and recommendation adopted*, 2007 WL 2427999. Thus, to the extent Petitioner argues the trial court abused its discretion under Ohio law by denying a motion for acquittal, such a claim does not present a question of federal law and is not cognizable on habeas review.

Petitioner's underlying claim – that his Due Process rights were violated because there was insufficient evidence presented at trial to convict him – is also unavailing. As the undersigned discussed above in Ground One, the Fifth District Court of Appeals addressed this very argument and reasonably determined there *was* sufficient evidence presented at trial to convict Petitioner. More importantly, the court's decision was not contrary to, or an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405. As such, the undersigned recommends Ground Two be denied as meritless.

Ground Three and Four

In Grounds Three and Four, Petitioner alleges ineffective assistance of counsel. Petitioner addresses his trial counsel in Ground Three, and his appellate counsel in Ground Four – arguing each was constitutionally ineffective for failing to raise various issues. (Doc. 8, at 19-30). With the exception of the sub-claim related to hearsay testimony, discussed in greater detail below, these claims are preserved for habeas review as Petitioner properly exhausted them on direct appeal. (Exs. 27 & 31, Doc. 7-1, at 126-49, 201-09); (Exs. 34 & 37, Doc. 7-1, at 242-52, 262-81). For the following reasons, the undersigned finds no error and recommends Grounds Three and Four be denied as meritless, and procedurally defaulted in part.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 685 (1984): that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and unreliable. *Harries v. Bell,* 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland,* 466 U.S. at 686–92). To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland,* 466 U.S. at 688. To meet the prejudice prong, there must exist a reasonable probability that, absent

20

counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694.

When considering the prejudice element, the focus is on whether counsel's errors undermined the

reliability of and confidence in the result. *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (citing

*Lockhart v. Fretwell,* 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense
> after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable. A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects of hindsight, to reconstruct
> the circumstances of counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the difficulties inherent in
> making the evaluation, a court must indulge a strong presumption that counsel's
> conduct falls within the wide range of reasonable professional assistance; that is,
> the defendant must overcome the presumption that, under the circumstances, the
> challenged action might be considered sound trial strategy.

*Strickland,* 466 U.S. at 689.

Further, habeas review of a *Strickland* claim is doubly deferential in a § 2254 proceeding.

*Yarborough v. Gentry,* 540 U.S. 1, 6 (2003) (per curiam) ("Judicial review of a defense attorney[

] . . . is . . . highly deferential—and doubly deferential when conducted through the lens of federal

habeas."). This double deference arises because the *Strickland* standard is a general standard,

giving a state court broader latitude to reasonably determine that a defendant has not satisfied the

standard. *Knowles v. Mirzayance,* 556 U.S. 11, 123 (2009). "A state court must be granted a

deference and latitude that are not in operation when the case involves review under the *Strickland*

standard itself." *Richter,* 562 U.S. at 101. Accordingly, the pivotal question in any § 2254 action

that presents an ineffective assistance claim, is "whether the state court's application of the

*Strickland* standard was unreasonable." *Id.* at 785. For a state court to have unreasonably applied

federal law, the court's ruling must be "objectively unreasonable" such that it was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond any

21

possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. In other words, if fair minds could disagree over whether the state court erred, Petitioner is not entitled to relief.

*Ground Three*

In Ground Three, Petitioner argues his trial counsel was ineffective for four reasons: (1) failing to file a motion to suppress; (2) failing to object to hearsay testimony; (3) failing to file a motion *in limine* regarding Petitioner's prior "bad acts"; and (4) "elicit[ing] testimony that was damaging and prejudicial to petitioner". *Id*. at 19-24. Respondent argues each sub-claim is meritless and, in part, procedurally defaulted. (Doc. 7, at 29-40).

The Fifth District Court of Appeals set forth the standard it applied to these claims:

{¶ 36} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶ 37} However, trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052.

*Umstead I*, 85 N.E.3d at 526; (Ex. 29, Doc. 7-1, at 192-93).

22

*Motion to Suppress*

Petitioner first contends his trial counsel was ineffective for failing to file a motion to suppress the evidence found inside his home. (Doc. 8, at 19-20). The Fifth District Court of Appeals addressed this argument and, in a reasonable application of *Strickland*, determined counsel's performance was not deficient. *Umstead I*, 85 N.E.3d at 526. The court concluded, "a failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." *Id*. (citing *State v. Shepherd*, 2015 WL 5917918, at *6 (Ohio Ct. App.)). Citing to Ohio's exigent circumstances statute, the court then determined "given the recognition in Ohio law of the exigencies connected to illegal methamphetamine manufacturing, we find no demonstration that a suppression challenge to the warrant-based search of appellant's house would have been successful[.]" *Id*. (citing Ohio Rev. Code § 2933.33(A)). This is consistent with federal law as Petitioner cannot meet the performance prong in *Strickland* because it is not ineffective assistance of counsel to fail to raise a meritless objection. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("[C]ounsel cannot be ineffective for failure to raise an issue that lacks merit."). As such, the undersigned recommends this sub-claim under Ground Three be denied as the court's holding is not contrary to, or an unreasonable application of, federal law.

*Failure to Object to Hearsay Testimony*

In Petitioner's second claim of ineffective assistance of trial counsel, he contends his trial attorney was ineffective for failing to object to hearsay testimony. (Doc. 8, at 22-23). He alleges that the "prosecutor in this case elicited testimony from Sgt. Stryker that both Petitioner's co-defendants had already pleaded guilty to charges stemming from the operation of the meth lab."

*Id*. at 23. Respondent contends this sub-claim is procedurally defaulted. (Doc. 7, at 34-35). The undersigned agrees, and recommends this sub-claim under Ground Three be denied as procedurally defaulted.

To seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254(b)(1)(A), which states: "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State". Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before obtaining habeas relief. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). A petitioner may also procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Finally,

24

a Petitioner may avoid default by demonstrating that there was "cause" for him to neglect a procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138.

Petitioner raised a claim of his trial counsel's failure to object to hearsay testimony to the on direct appeal. *See* Ex. 27, Doc. 7-1, at 146-47. However, as Respondent correctly points out, Petitioner's hearsay claim on direct appeal was vague and did not raise a specific objection. *Id*. The Fifth District Court of Appeals concluded:

> {¶ 43} Appellant next urges that his trial attorney was ineffective for failing to object to alleged hearsay statements during the trial. We first note it is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers,* 9th Dist. Summit No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted). However, in this instance appellant's brief merely makes vague reference to "statements made by Mr. Spurlock and Mr. White to law enforcement and a report received from BCI." Appellant's Brief at 15. We find appellant's argument to be unpersuasive in light of the requirements of App.R. 16(A)(7). *See State v. Nelson–Vaughn*, 5th Dist. Stark No. 2015CA00124, 2016-Ohio-1426, 2016 WL 1291755, ¶ 67.

*Umstead I*, 85 N.E.3d at 527.

Here, the court did not reach the merits of Petitioner's claim because he did not comply with Ohio Appellate Rule 16(A)(7). *Id*. The rule requires "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Ohio App. R. 16(A)(7). The court here concluded Petitioner's allegations were vague and unsupported in violation of the rule. *Umstead I*, 85 N.E.3d at 527. Courts in this district and in the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent ground upon which the state may foreclose federal habeas review. *See, e.g., Campbell v. Bunting*, 2015 WL 4984871, at *8-9 (N.D. Ohio); *Johnson v.*

*Bradshaw*, 2006 WL 2945915, at *9-10 (N.D. Ohio); *Tompkins v. Warden, Dayton Corr. Inst.*, 2010 WL 4683966, at *5 (S.D. Ohio), *report and recommendation adopted*, 2010 WL 4683964. Petitioner's claim is, therefore, procedurally defaulted. Furthermore, Petitioner has not demonstrated cause and prejudice to excuse the default. As such, the undersigned recommends it be denied as procedurally defaulted.

### *Failure to File a Motion in Limine*

In his third sub-claim of ineffective assistance of counsel under Ground Three, Petitioner contends his trial counsel was ineffective for failing to file a motion *in limine* to block Sgt. Stryker's testimony regarding his prior contact with Petitioner. (Doc. 8, at 23). The Fifth District Court of Appeals considered this claim through *Strickland's* lens, and rejected it:

> {¶ 46} In the case *sub judice*, in regard to evidence of the generic "familiarity" the two officers may have had with appellant, we conclude appellant's trial counsel's decision not to invoke the aforesaid evidentiary rule did not fall below an objective standard of reasonable representation. In regard to the playing of the video interview between appellant and Sgt. Stryker, we conclude, as urged by the State in its response brief, that the decision not to object was likely trial strategy to allow the jury to see appellant's denial of any wrongdoing and any involvement in a meth lab, without having appellant take the stand as a witness. Appellant's trial counsel's decision in this regard thus also did not fall below an objective standard of reasonable representation.

*Umstead I*, 85 N.E.3d at 528.

Here, as the court reasonably concluded, Petitioner does not meet the performance prong of the *Strickland* test – he fails to demonstrate how his trial attorney's conduct was objectively unreasonable such to rise to the level of ineffective assistance. The appellate court noted, the decision of whether or not to file a motion *in limine* here was a strategic one that did not fall below an objective standard of reasonable representation. *Id*. This is not inconsistent with federal law as attorneys enjoy considerable discretion in deciding which witnesses to call and how they examine them. *See Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017) (citing

26

*Carter v. Mitchell*, 829 F.3d 455, 471 (6th Cir. 2016)); *see also Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) ("[W]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference."). For these reasons, the undersigned recommends this sub-claim be denied as the court's holding is not contrary to, or an unreasonable application of, federal law.

*Eliciting Prejudicial Testimony*

In Petitioner's final ineffective assistance of counsel sub-claim under Ground Three, he alleges his trial counsel was ineffective for "elicit[ing] testimony that was damaging and prejudicial", specifically, testimony by Sgt. Stryker outlining Petitioner's prior "bad acts" of purchasing pseudoephedrine. (Doc. 8, at 23-24). The Fifth District Court of Appeals also found this claim meritless, holding:

> {¶ 48} In addressing such a claim, we remain mindful that "[a] defendant is entitled to a fair trial but not a perfect one." *See State v. Bleigh,* Delaware App. No. 09-CAA-03-0031, 2010-Ohio-1182, 2010 WL 1076253, ¶ 133, quoting *Bruton v. United States* (1968), 391 U.S. 123, 135–136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (internal quotations omitted). Furthermore, the scope of cross-examination is considered part of trial strategy, and debatable trial tactics do not establish ineffective assistance. *State v. Conway,* 109 Ohio St.3d 412, 848 N.E.2d 810, 2006-Ohio-2815, ¶ 101.

> {¶ 49} The primary purpose of cross-examination is to test the accuracy, truthfulness, soundness, and credibility of testimony given on direct examination. *Baird v. Cincinnati Transit Co.,* 110 Ohio App. 94, 99, 168 N.E.2d 413 (1st Dist.1959). We have the benefit of hindsight, but during the heated ebb and flow of the typical cross-examination process, a reasonable defense attorney may have to occasionally risk venturing into areas that could unexpectedly result in responses unfavorable to his or her client. Under the circumstances herein presented, we find appellant has failed to demonstrate a reasonable probability that but for counsel's alleged error in cross-examining the officer, the outcome of the trial would have been different.

*Umstead I*, 85 N.E.3d at 528.

Keeping in line with *Strickland*, the appellate court rejected Petitioner's ineffective assistance of counsel claim after concluding the trial attorney conducted the cross-examination as part of a reasonable trial strategy. *Id.* Again, Petitioner has failed to demonstrate how his trial attorney's conduct was objectively unreasonable so as to rise to the level of ineffective assistance as the decision on how to cross-examine a witness is a strategy decision entitled to *Strickland* deference. *Rayborn*, 489 F. App'x at 878. Furthermore, Petitioner has failed to show how counsel's decision deprived him of a fair trial such that, but for his ineffectiveness, the trial result would have been different. *See Strickland*, 466 U.S. at 694. The court's decision here is not an unreasonable application of, or contrary to, federal law. For these reasons, the undersigned recommends this claim be denied.

*Ground Four*

In Ground Four, Petitioner alleges his appellate counsel was ineffective for: (1) failing to argue the evidence "was insufficient to sustain 'consecutive sentences' imposed in this case" (Doc. 8, at 25-27); (2) failing to argue the evidence as insufficient to support the convictions (Doc. 1, at 10); and (3) failing to challenge the inadmissible expert testimony of Stephanie Laux, *id.* Respondent contends these claims are moot and meritless. (Doc. 7, at 41-47).

*Testimony of Stephanie Laux*

Turning first to Respondent's mootness argument, the undersigned notes Petitioner raised each of these ineffective assistance of appellate counsel claims in his Ohio Rule 26(B) application to reopen, specifically:

1. Appellate counsel violated Appellant's federal and state constitutional rights to Due Process in failing to adequately argue that the evidence was insufficient to sustain the weapons under disability charge. U.S. Const. 6th and 14th Amendments.

2. Appellate counsel's failure to adequately show that the evidence was insufficient to sustain the tampering with the evidence charge violated Appellant's 6th and 14th Amendment rights under the federal constitution to Due Process and the effective assistance of counsel.

3. Appellate counsel violated Appellant's state and federal rights to Due Process and the effective assistance of counsel in failing to argue that the evidence was insufficient to support the sentence in violation of the 14th Amendment of the United States Constitution.

4. Counsel was [] ineffective in failing to challenge the testimony of expert Stephanie Laux when the State failed to comply with Criminal Rule 16(K).

(Ex. 34, Doc. 7-1, at 242-51) (capitalization altered). The Fifth District Court of Appeals granted Petitioner's application as to the first and fourth claims, denying the application as to the rest. (Ex. 35, Doc. 7-1, at 253-59). On remand, Petitioner's new counsel set forth the following two proposed assignments of error, but explained that she believed them to be meritless:

1. Appellant was provided ineffective assistance of appellate counsel due to counsel's failure to challenge the evidence as to whether Appellant has a prior conviction to support his weapons under disability conviction.

2. Appellant was provided ineffective assistance of appellate counsel due to counsel's failure to challenge [] expert testimony of Stephanie Laux for failure to comply with Crim.R.16(K).

(Ex. 39, Doc. 7-1, at 283-93). Here, Petitioner's appellate counsel presented these assignments to the Fifth District Court of Appeals within an *Anders* brief, wherein she requested permission to withdraw from the appeal because "a review of the two issues approved for briefing by this Court . . . show that neither issue has merit." *Id*. The Supreme Court in *Anders* recognized that, on occasion, appellate counsel may find an appeal "to be wholly frivolous" and set forth a detailed procedure which allows counsel to withdraw. 386 U.S. at 744. "After a conscientious examination of [the case]", appellate counsel should so advise the court of the frivolous nature of the appeal and request permission to withdraw – a request which must be accompanied by a brief "referring to anything in the record that might arguably support the appeal". *Id*. Counsel must furnish

29

appellant with a copy of the brief in enough time to "allow[] him to raise any points that he chooses[.]" *Id*.

Here, the court of appeals accurately set forth the *Anders* requirements, and held "appellate counsel in this matter ha[d] adequately followed the procedures required by *Anders v. California*, *supra*." (Ex. 42, Doc. 7-1, at 341). The court also noted that, Petitioner, *pro se*, filed his own brief where he raised assignments of error identical to those proposed by counsel. *See* Ex. 40, Doc. 7-1, at 309-14. Having considered each brief, the court reached the merits of Petitioner's arguments and overruled each assignment of error. (Ex. 42, Doc. 7-1, at 341-44). The court concluded: "after independently reviewing the record, we agree with counsel's conclusion that no arguable meritorious claims presently exist upon which to base further direct appeal." *Id*. at 344. Here, Petitioner obtained a merits review of the two claims he asserts his appellate counsel was ineffective for failing to raise. After review, the court determined Petitioner was not prejudiced by his trial counsel's performance. *Id*. Because the court concluded Petitioner was not so prejudiced, he is therefore unable to demonstrate his appellate counsel was ineffective. In other words, Petitioner has not demonstrated how his appellate counsel could have raised these issues more effectively than she did, thereby changing the outcome of the appeal. As such, the undersigned cannot conclude counsel's performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland,* 466 U.S. at 687. For these reasons, the undersigned recommends this claim be denied.

### *Insufficient Evidence – Convictions and Sentencing*

As to Petitioner's first and second claims – that appellate counsel was ineffective for failing to adequately argue the evidence was insufficient to sustain his consecutive sentences and support

his convictions – these claims were expressly rejected by the Fifth District Court of Appeals.

Specifically, the court concluded:

> In our decision of February 24, 2017, we addressed the sufficiency of the evidence as to the complicity to tamper count and rejected said argument. *Umstead* at ¶ 23. Appellant seems to presently argue that his appellate counsel should have focused more on the issue of whether appellant knew that an investigation was in progress or was likely to be instituted when co-defendant Jason White was caught burning items behind the house. However, as we noted in our decision, Ohio law recognizes circumstantial evidence is sufficient to prove the essential elements in a criminal case. *See State v. Willey*, 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962. Furthermore, it is well-established that in order to provide effective assistance, appellate counsel need not raise every conceivable issue on appeal. *See State v. Gumm*, 73 Ohio St.3d 413, 428 1995-Ohio-24, 653 N.E.2d 253 (1995).
>
> ***
>
> Appellant next maintains his appellate counsel ineffectively declined to pursue a challenge to his consecutive sentences. Specifically, appellant focuses on the trial court's findings under R.C.2929.14(C)(4)(b), which sets forth: "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."
>
> The gist of appellant's present argument is his spurious claim that his participation in methamphetamine manufacturing, even in the vicinity of children, did not constitute "great or unusual" harm for the purposes of the consecutive sentencing statute. Upon review, we find appellant has failed to meet his burden for purposes of reopening his appeal on this issue.

(Ex. 35, Doc. 7-1, at 256-57).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, Petitioner must demonstrate appellate counsel's performance was deficient, and the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

Here, the Fifth District Court of Appeals again rejected Petitioner's sufficiency of the evidence claim, referring back to its February 2017 decision on the matter. (Ex. 35, Doc. 7-1, at 256-57) (citing *Umstead I*, 85 N.E.3d at 525-28). It noted Petitioner was dissatisfied that his attorney's focus was not on the issue of the investigation into his co-defendant's trash burning; however, the court again emphasized that, in Ohio, circumstantial evidence is sufficient to prove the essential elements of a crime. *Id*. The court thus determined Petitioner failed to meet his burden showing his counsel was ineffective. *Id*.

Petitioner has likewise failed to meet his burden here. Citing *Strickland*, the state court concluded Petitioner failed to demonstrate that his appellate counsel's performance was deficient, and the deficient performance so prejudiced his appeal that the appellate proceedings were unfair and the result unreliable. (Ex. 35, Doc. 7-1, at 254-57). Consistent with federal law, the court also determined an appellant has no constitutional right to have every non-frivolous issue raised on appeal, *see Jones v. Barnes*, 463 U.S. 745, 750–54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *see United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted). The appellate court's decision was not an unreasonable application of *Strickland* and thus it cannot be disturbed by this Court. For these reasons, the undersigned also recommends Ground Four be denied as meritless.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).